UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASTRID M. FLOWERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:24-CV-1504-ZMB |
| THE WASHINGTON UNIVERSITY, *d/b/a* *Washington University School of Medicine*, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant The Washington University's Motion to Dismiss for Failure to State a Claim. Doc. 13. Plaintiff Astrid Flowers has pled sufficient facts to support an individual overtime claim under the FLSA but not an FLSA collective action. Accordingly, the Court grants in part and denies in part the University's Motion to Dismiss.

### **BACKGROUND**

**I.    Factual Background**

The Washington University School of Medicine's Department of Developmental Biology, Cell Biology, & Regenerative Medicine (DCBRM) operates a Postbaccalaureate Research Program ("Postbacc Program"), which offers college graduates research experience to advance their career prospects in the biomedical sciences through either one- or two-year programs. Doc. 1 ¶ 16. The DCBRM's website[1] notes that participants in these programs are classified as full-time, non-exempt hourly employees who are eligible for benefits. *Id.* ¶¶ 17–18. They are compensated at an hourly rate of $17.10 and paid on a monthly basis. *Id.* ¶ 18.

---

[1] At this stage, the Court is limited to the information contained in the pleadings, but that includes "documents necessarily embraced by the complaint." *Carter v. Ludwick,* 139 F.4th 982, 989 (8th Cir. 2025); *see also Worley v. AR Res., Inc.*, No. 4:18-CV-1409-PLC, 2019 WL 480028, at *1 (E.D. Mo. Feb. 7, 2019).

Flowers was accepted into the Postbacc Program in July 2023 and started as a researcher that month. *Id.* ¶ 21. Flowers was expected to work in excess of 40 hours per week—averaging 50 hours from Monday to Friday, with an 8-hour weekend shift roughly every other week—for a cumulative average of approximately 53 hours per week. *Id.* ¶¶ 22–25. Flowers was not paid for the extra hours despite several complaints. *Id.* ¶¶ 26–27. Through conversations with researchers in the same and other cohorts, Flowers "came to understand" that long hours were not uncommon. *Id.* ¶ 28. Flowers quit the program after about three months "primarily" due to the overtime issue. *Id.* ¶ 26.

## II.    Procedural Background

Flowers filed this case on November 8, 2024. *Id.* The Complaint alleges violations of the Fair Labor Standards Act (FLSA), *id.* ¶¶ 29–34, which requires covered employers to compensate non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a work week, *see* 29 U.S.C. § 207(a)(1). Flowers's FLSA claim is styled as a collective action on behalf of all similarly situated employees under section 16(b) of the FLSA. Doc. 1 ¶¶ 12–15; 29 U.S.C. § 216(b). Flowers also brings a claim for violation of Missouri's Minimum Wage Law (MMWL). Doc. 1 ¶¶ 35–40; Mo. Rev. Stat. § 290.500.

The University moved to dismiss on three main grounds, arguing that Flowers cannot establish an employer-employee relationship, failed to adequately plead an individual or collective-action overtime claim, and has no basis to seek equitable relief under the MMWL. Doc. 13. In response, Flowers abandoned any request for declaratory or injunctive relief under Missouri law[2] but otherwise insisted that the other claims were adequately pled. Doc. 16. Following the University's reply, Doc. 17, Flowers filed a motion to conditionally certify the FLSA collective action, Doc. 23, which also is fully briefed, Docs. 24, 27, 31.

---

[2] In light of this concession, the Court will not further address this point.

2

**LEGAL STANDARD**

**I.      Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II.     FLSA

The FLSA requires covered employers to pay at least time-and-a-half wages for any hours worked beyond the standard 40-hour workweek. 29 U.S.C. § 207(a)(1). However, the law distinguishes between "employees"—who are covered by these overtime provisions—and certain trainees, beginners, apprentices, or learners—who are not. *See Moore v. Wilson Logistics, Inc.*, 2025 WL 1780450, at *4 (W.D. Mo. Feb. 12, 2025) (citing *Walling v. Portland*, 330 U.S. 148, 151 (1947) ("*Walling I*")). The FLSA's "applicability is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes" but by the economic reality of the relationship between the alleged employee and employer. *Petroski v. H & R Block Enters.*, 750 F.3d 976, 979 (8th Cir. 2014) (citation omitted). In distinguishing between employees and trainees, courts consider the "relative benefits of the work performed by the purported employee," *id.* at 980, and whether the individual "work[s] for their own advantage on the premises of another," *Walling I*, 330 U.S. at 152. "If the parties' agreement does not contemplate compensation, and the alleged employer received 'no immediate advantage' from the activity, then there is no employment relationship." *Vallone v. CJS Sols. Grp.*, 9 F.4th 861, 866 (8th Cir. 2021).

The Eighth Circuit has also cited criteria provided by the Department of Labor as helpful in determining if someone is a trainee. *Petroski*, 750 F.3d at 982. These criteria are whether:

> (1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school,
>
> (2) the training is for the benefit of the trainees or students,
>
> (3) the trainees or students do not displace regular employees, but work under their close observation,
>
> (4) the employer that provides the training derives no immediate advantages from the activities of the trainees or students, and on occasion operations may actually be impeded,

4

>(5) the trainees or students are not necessarily entitled to a job at the conclusion of the training period, and
>
>(6) the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training.

DEPT. OF LABOR, FIELD OPERATIONS HANDBOOK ch. 10b11 (2017), https://www.dol. gov/sites/dol gov/files/WHD/legacy/files/FOH_Ch10.pdf [https://perma.cc/WW2T-UYG4] ("DoL HANDBOOK").[3]

While the Eighth Circuit has not addressed the issue, this Court and others have held that a viable FLSA overtime claim requires a plaintiff to show they "worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Jacobs v. Johnson Storage & Moving Co. Holdings*, No. 4:18-CV-24-SNLJ, 2018 WL 4489367, at *3 (E.D. Mo. Sept. 19, 2018) (collecting cases and adopting standard from *Landers v. Quality Commc'ns*, 771 F.3d 638, 644–46 (9th Cir. 2014)). However, the *Landers* Court clarified that "[a] plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." 771 F.3d at 645.

The FLSA allows plaintiffs to bring a collective action on behalf of "themselves and other employees similarly situated," 29 U.S.C § 216(b), but there is a division of authority as to the appropriate standard on a motion to dismiss such claims. "Some courts have not required plaintiffs to plead any facts in support of the collective action at the motion to dismiss stage," deferring consideration of whether employees are "similarly situated" until the plaintiff moves to certify the collective action. *Zanders v. Wells Fargo Bank N.A.*, 55 F. Supp. 3d 1163, 1177 (S.D. Iowa 2014) (internal citations omitted) (collecting cases). But "other courts have found that plaintiffs must meet the normal pleading requirements of Rule 8 even when the complaint involves an FLSA collective action." *Id.* (collecting cases).

---

[3] Without explanation, Flowers instead advances a seven-factor test adopted by the Second Circuit for determining the employment status of unpaid interns. Doc. 16 at 3–4. The Court finds that the six-factor trainee test is more apt for Postbacc researchers, but even if that were not the case, it is obliged to apply the test the Eighth Circuit has endorsed absent a compelling justification, which Flowers has not even attempted to provide.

5

**DISCUSSION**

The University makes a three-pronged attack on the Complaint to suggest that it fails to state a claim. First, the University alleges that Flowers failed to establish an employer-employee relationship, as opposed to that of a "trainee." Doc. 14 at 5–12. Second, it argues that the Complaint fails to allege with sufficient specificity that Flowers had worked overtime and was denied payment. *Id.* at 12–14. Finally, the University challenges the assertion of an FLSA collective action because Flowers failed to plausibly allege that other individuals in the Postbacc Program were similarly situated. *Id.* at 14–15. The Court will examine each of these arguments in turn.

**I.     Employer-Employee Relationship**

The University first asserts that Flowers was merely a trainee instead of an employee for FLSA purposes. In support, it cites various descriptions from DCBRM's website to suggest that the Postbacc Program was primarily for the benefit of the researchers themselves, and not the University. Doc. 16. But at this preliminary stage, the allegations in the Complaint are sufficient to survive a motion to dismiss. At a minimum, after drawing all inferences in Flowers's favor, the Court cannot conclude that Flowers was trainee because key considerations undercut the University's position (although the analysis may change as the litigation proceeds).

Consider the most obvious factor weighing in Flowers's favor— whether the trainee was paid (factor #6). *See* DOL HANDBOOK ("the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training"). The University committed to paying its researchers a wage of $17.10 an hour and described the Postbacc researchers "full-time, non-exempt hourly **employees**[.]" Doc. 1 ¶¶ 17–18. While not dispositive, this factor alone distinguishes the instant case from the precedent the University cited, which generally concerns unpaid work. And while the University suggests that one case, *Walling II*, involved railroad trainees who "had been paid the minimum wage up until that point," Doc. 14 at

6

7, a closer examination reveals that the Supreme Court did "not reach the question as to whether [the paid trainees] were or were not employees under the Act," *Walling v. Nashville, C. & St. L. Ry.*, 330 U.S. 158, 160 (1947). Further, in considering this distinction, the Eighth Circuit has not yet confronted a scenario where putative employees were receiving wages. *See Petroski v. H & R Block Enters.*, 750 F.3d 976, 979–80 (8th Cir. 2014) (considering whether seasonal tax preparers were employees during uncompensated mandatory training). Here, it is undisputed that Flowers paid while participating in the Postbacc Program, Doc. 1 ¶ 38, which militates in favor of finding an employer-employee relationship.

While it is undisputed that there was no expectation of future employment for Flowers (factor #5), cutting in favor of the University, there is simply not enough information regarding the other factors at this point to conduct a meaningful analysis. Indeed, as Flowers notes, many of the cases the University cites are "either on a motion for summary judgment or after trial," and after the parties had the full benefit of discovery to support arguments on the various factors. Doc. 16 at 5. For example, it is unclear whether Flowers would have displaced regular employees, especially given that Flowers averaged 53 hours of work each week, or the extent to which Flowers was supervised or closely observed by regular employees. There may be aspects of the Postbacc Program that differentiated researchers from lab technicians, including increased access to mentorship, attendance at various career-oriented workshops, and other educational opportunities. *See* Doc. 14 at 9. But it is also possible that the work performed by Postbacc researchers provided immediate benefit to the University by supporting the research of the faculty members, and that the Postbacc researchers displaced at least some work that otherwise would have been performed by lab technicians. At least at this stage, the Court is required to draw all reasonable inferences in the non-movant's favor, and doing so means that the University has not established that Flowers was merely a trainee while participating in the Postbacc Program.

**II.     Flowers's FLSA Overtime Claim**

The University next contends that Flowers failed to plead with sufficient specificity an individual overtime claim under the FLSA. But the case that the University cites actually confirms that Flowers's allegations are sufficient to survive a motion to dismiss. While emphasizing that "generalized allegations asserting violations of the [FLSA's] overtime provisions" are insufficient, the *Landers* Court recognized that a plaintiff *could* "establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed." 771 F.3d at 645. That is exactly what the Complaint does here.

Flowers estimates working an average of at least 53 hours but receiving pay (at a rate of $17.10 per hour) for only 40 hours a week. Doc. 1 ¶¶ 18, 25. And based on the brief time period and average hours, a reasonable inference is that Flowers worked overtime every week of the relevant period. Thus, while the Complaint could have been more detailed, Flowers's assertion of an individual FLSA overtime claim is sufficient to give the University notice and survive a motion to dismiss. *See Landers*, 771 F.3d at 645 ("Obviously, with the pleading of more specific facts, the closer the complaint moves toward plausibility. However, . . . we decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA.").

**III.    FLSA Collective Action**

The University's final argument as to the FLSA collective action holds water. Flowers fails to adequately allege overtime violations on the part of others or show that Flowers is similarly situated to these unspecified researchers. Doc. 1 at 14–15.

The Complaint contains only three paragraphs with allegations concerning other researchers. *Id.* ¶¶ 14, 28, 31. Two are conclusory, rotely noting that "[Flowers], collective action members,

8

and putative collective actions members are similarly situated" and "were denied overtime pay for hours worked over forty in a workweek" and that the University "willfully failed to pay [Flowers] and all similarly situated employees an overtime premium for their hours worked over 40 in a workweek." *Id.* ¶¶ 14, 31. And the final paragraph fails to even allege that other researchers were not properly paid, only stating that Flowers spoke "to numerous other post-bacc researchers both inside and outside of their cohort" and that their hours worked were similar (but not that they went unpaid). *Id.* ¶ 28. This lone non-conclusory allegation is insufficient to make out an overtime claim. Thus, Flowers has failed to allege facts sufficient to support a collective action.

Flowers suggests that pleading such facts is unnecessary at this stage, and that consideration of such factors is best left to the collective action certification process, which the University is attempting to "short-circuit." Doc. 16 at 8. As noted above, courts are split on the issue of whether the question of collective action is appropriately considered at the motion to dismiss stage. *See Zanders*, 55 F. Supp. 3d at 1177–78. But Flowers fails to establish that anyone else failed to receive overtime pay, which is surely a prerequisite to a collective action.

Moreover, the Court is convinced that FLSA plaintiffs must plead at least minimal facts to establish that they are similarly situated to fellow employees. *Id.* Indeed, "**all** complaints must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and there is no textual basis to suggest that this rule does not apply to the FLSA. *Id.* at 1178 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted and emphasis added). Here, the Complaint raises significant questions as to whether Flowers is similarly situated to the other Postbacc researchers, given the reference to researchers both "inside and outside their cohort." Doc. 1 ¶ 28. Definitionally, there is a good chance those "outside [Flowers's] cohort" are not similarly situated, but it is impossible to know from the Complaint whether any distinctions are

9

material. Similarly, as the University notes, there are over 75 different faculty members with their own labs to which Postbacc researchers can be assigned, raising further doubts about whether Flowers is similarly situated to the researchers assigned to other mentors. Doc. 14 at 15. As such, there is insufficient evidence on the face of the Complaint to substantiate the claim that Flowers is similarly situated to other Postbacc researchers, further confirming that dismissal is warranted for the FLSA collective action claim.[4]

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant The Washington University's [13] Motion to Dismiss. Specifically, the Court dismisses the FLSA collective-action claim and the claim for equitable relief under the Missouri Minimum Wage Law. Further the Court **DENIES** as moot Plaintiff Astrid Flowers's [23] Motion to Certify Class and the University's [28] Motion for Hearing on Certification.

So ordered this 21st day of January 2026.

_____
ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

---

[4] This decision also moots Flowers's motion to conditionally certify the FLSA collective action, Doc. 23, as the Court has dismissed the collective action portion of Flowers's claims. *Gillespie v. Cracker Barrel Old Country Store Inc.*, 2022 WL 2905041, at *4 (D. Ariz. July 22, 2022) (dismissing as moot, among other motions, an amended motion for conditional certification after granting a motion to dismiss).